THOMAS E. BOSWELL'S LESSEE, PLAINTIFF, *v.* LUCIUS B. OTIS,
ADMINISTRATOR, MARGARET DICKINSON, WIDOW, AND EDWARD F.,
JULIA S., MARGARET O., JOHN B. B., RODOLPHUS, MARTHA JANE,
AND JAMES A. DICKINSON, MINOR CHILDREN, OF RODOLPHUS DICK-
INSON, DECEASED, BY L. O. RAWSON, THEIR GUARDIAN AND NEXT
FRIEND, ET AL.

The chancery act of Ohio of 1824 confers on the Court of Common Pleas general
chancery powers. The twelfth section gives jurisdiction over the rights of absent
defendants, on the publication of notice, "in all cases properly cognizable in courts
of equity, where either the title to, or boundaries of, land may come in question, or
where a suit in chancery becomes necessary in order to obtain the rescission of a
contract for the conveyance of land, or to compel the specific execution of such
contract."

A bill being filed to compel the specific execution of a contract relating to land,
where the defendants were out of the State, the court passed a money decree, and
ordered the sale of other lands than those mentioned in the bill.

This decree was void, and no title passed to the purchaser at the sale ordered by the
decree.

The act did not authorize such an act of general jurisdiction. A special jurisdiction
only was given *in rem.*

Jurisdiction is acquired in one of two modes, — first, as against the person of the de-
fendant, by the service of process, or secondly, by a procedure against the property
of the defendant within the jurisdiction of the court. In the latter case, the de-
fendant is not personally bound by the judgment, beyond the property in question.

THIS case came up from the Circuit Court of the United
States for Ohio, upon a certificate of division in opinion be-
tween the judges thereof.

It was an ejectment brought by Boswell, a citizen of Ken-
tucky, against Rodolphus Dickinson and others, tenants in pos-
session, to recover tract number seven in the United States re-
serve, of two miles square, at Lower Sandusky, in the State of
Ohio. Dickinson having died, his heirs and representatives
were now parties.

Before relating the proceedings in the ejectment, it is proper
to notice some other occurrences which were prior in time.

In May, 1825, Thomas L. Hawkins filed a bill in the San-
dusky Common Pleas, against Thomas E. Boswell, William T.
Barry, and William Whitimore. The bill stated that all these
parties were engaged, as partners, in building a saw-mill upon
lot number nine; that they went on with the work until 1823;
that he, Hawkins, was a creditor of the concern; that the
other parties had obtained a title to two thirds of the lot, and
refused to convey any part of it to the complainant. The bill
then concludes thus: — "To the end, therefore, that said Bos-
well, Barry, and Whitimore may, under their corporeal oaths, true
answers make to all matters herein charged, and on the final
hearing of this cause your honors will decree that said defend-
ants convey one fourth of the said land to which they have ob-

tained a legal title, and also to account to your orator for the money and time he has expended more than his share on said mill, and the improvements of said land, and that notice be given defendants," &c.

It being made known that the defendants were non-residents of the State, but resided in the States of Kentucky and Massachusetts, notice of the pendency of the suit was published in the Western Statesman, a newspaper printed at Columbus, Ohio, for the term of nine weeks successively.

At May term, 1826, a decree was passed that the bill should be taken *pro confesso*, and a master was directed to take an account between the parties, who reported a balance due to Hawkins of $1,844.17.

In July, 1826, the court passed a final decree, "that the complainant do recover of the said defendants the said sum of eighteen hundred forty-four dollars and seventeen cents, and his costs by him in this behalf expended. It is further ordered, adjudged, and decreed, that this decree shall, from the time of its being pronounced, have the force, operation, and effect of a judgment at law, and shall be a lien upon all the town lots of the defendants within said county, and also all the other real estate of the said defendants within said County of Sandusky, as security for the satisfaction of said decree; and it is further ordered, adjudged, and decreed, that, if the above sum of eighteen hundred forty-four dollars and seventeen cents, and the costs to be taxed in this suit, be not paid within thirty days from the date of this decree, upon a precipe being filed with the clerk of this court by the complainant or his solicitor, execution shall issue against the goods, chattels, lands, and tenements of the said defendants, which shall be taken in execution, and sold in like manner as though said execution issued on a judgment rendered in a court of law; and all further proceedings in this cause to be continued until the next term."

Under a *pluries fi. fa.*, lot number seven was sold, and in May, 1832, the sheriff made a deed of it to Sardis Birchard.

We can now return to the ejectment.

In the trial of it, Boswell, the plaintiff, produced a patent from the United States for the lot number seven, dated September 2, 1831, and also the following agreement of counsel.

"It is admitted, as evidence in this case, that the plaintiff's lessor, said Thomas E. Boswell, now is, and ever since the year A. D. 1818 has been, a resident of the city of Lexington, County of Fayette, and State of Kentucky; that from the 1st

day of May, A. D. 1825, up to the 1st day of August, A. D. 1826, he was not within the State of Ohio, and that the premises in controversy in this case are of the value of ten thousand dollars.

"LANE, BUCKLAND, & HAYS,
*Attorneys for Defendants.*

"*Lower Sandusky, Ohio, August* 31st, *A. D.* 1846."

The plaintiff there rested:

The defendants then offered in evidence a certified copy of the record of the proceedings of the Court of Common Pleas of Sandusky County, and also of the sheriff's deed, to the introduction of which, as evidence in the case, the plaintiff objected.

And thereupon, by consent of parties, the jury do say, that if, in the opinion of the court, the said record and sheriff's deed are by law admissible in evidence, then the said defendants are not guilty of the trespass and ejectment in the declaration mentioned; but if, in the opinion of the court, the said record and sheriff's deed are not admissible as evidence, then the jury say that the defendants are guilty of the trespass and ejectment in the declaration mentioned, and assess the plaintiff's damages at one cent; and thereupon the arguments of counsel being heard, and due deliberation had, the opinions of the judges were divided on the following questions, to wit: —

1. Whether or not the proceedings and decree of the said Court of Common Pleas of Sandusky County, set forth in said record, are *coram non judice* and void.

2. Admitting said proceedings and decree to be valid so far as relates to the lands specifically described in the said bill in chancery, whether or not said proceedings and decree are *coram non judice* and void so far as relates to lot number seven, in controversy in this case, and which is not described in said bill in chancery; or, in other words, whether said proceedings and decree are not *in rem*, and so void and without effect as to the other lands sold under said decree.

And thereupon it is ordered, that said questions be certified for decision to the next term of the Supreme Court of the United States, according to the act of Congress in such case made and provided.

The cause was submitted on printed arguments by *Mr. Ewing*, for the plaintiff, and *Mr. Stanberry*, for the defendants. From these arguments it is only possible to give extracts.

*Mr. Ewing*, for the plaintiff.

The question is upon the process and the decree. If the process be not sufficient to bring the defendant into court and make him a party to the decree, where all the other proceedings are regular, the case cannot be improved by any conceivable amount of errors, irregularities, or discrepancies between the bill and the decree.

The decree is for a sum of money found due by a master upon reference, and it is for nothing else. The case, then, is precisely the same as if the bill had been filed for the recovery of that sum of money merely, and had named no other object; for the decree cannot be strengthened at all by errors and irregularities upon the record. I do not claim that it is weakened by those irregularities, — I merely say that it is not strengthened; it is no better than if the bill had exactly supported the decree.

Now, this personal decree for money against an absent defendant cannot be sustained on general principles of equity. It is *coram non judice*, if jurisdiction were not obtained by personal service; this is not and cannot be disputed. As a matter of general equity, then, independently of statutory regulation, this whole proceeding would be a nullity, and the sale under the decree void.

But the defendants attempt to sustain the proceeding under the chancery act of Ohio of 1824, and they copy in their brief, as bearing upon the case, the 1st, 7th, 12th, 13th, 16th, 38th, and 40th sections of that act.

The first section gives the Courts of Common Pleas general chancery jurisdiction in all cases properly cognizable in a court of chancery, that is, jurisdiction over the person, and through the person over property. This jurisdiction is obtained by personal service only.

The seventh section allows a petition to be filed against an absent person, where it is necessary to join him with a defendant residing in the State. This does not touch the case at bar. There was no defendant residing in the State.

Section twelfth is the one under which it was attempted to bring this case. It gives the court jurisdiction over the rights of absent defendants, upon notice, " in all cases properly cognizable in courts of equity, where either the title to, or boundaries of, land may come in question, or where a suit in chancery becomes necessary in order to obtain the rescission of a contract for the conveyance of land, or to compel the specific execution of such contract."

This decree does not touch "the title to, or boundaries

of, land"; no decision is made on either in it. It does not relate to "the rescission of a contract for the conveyance of land," or to the compelling of "the specific. execution of such contract"; not a word is said of either in it. This decree, then, does not belong to a case in which any other than personal service can bring the defendant into court; and if the decree be the test of jurisdiction, this case was *coram non judice.*

Where there is a plea to the jurisdiction of a court pending a cause, or a motion to dismiss for want of jurisdiction, there is of course no judgment or decision, and the case can be looked to only in its inceptive stages; but when the final judgment or decree has been rendered in a court, and the jurisdiction of that court, after its final action, is contested, it is the jurisdiction to render the judgment or to pronounce the decree which is in question, — not the jurisdiction to receive the declaration or the bill in chancery. It is the judgment or decree alone that can affect the rights of the absent party injuriously, not the intermediate proceedings; the bill cannot deprive him of any right, or involve him in any liability, but the decree may; the character of the decree, then, rather than of the bill, must determine the necessity of personal service. If in a suit at law the declaration be in trespass and the judgment in debt; or if, as in this case, the bill was filed to compel the specific execution of a contract for the conveyance of land, and the decree is for a sum of money merely; it is the judgment in the one case, and the decree in the other, that the parties must abide by. The court which has to declare it valid, or void, will not look at the intermediate proceedings to see if they warranted the decree or judgment. If the court had jurisdiction to render such judgment or decree, it is binding and valid, no matter how irregular or erroneous the proceedings. If they had not jurisdiction to render the decree, no error or irregularity in the proceedings can help out the jurisdiction. This is a personal decree for the payment of money, — a decree to operate *in personam;* there is no provision in the chancery act of Ohio by which an absent defendant can be brought in to answer to a bill praying for such a decree. It will not, I think, be pretended, that, if an honest bill, and one direct to the purpose, had been filed, claiming merely a sum of money as a balance of partnership accounts, the jurisdiction could have been sustained. There could, indeed, be no pretence for sustaining it; and surely the decree is no better because it was obtained by an indirection.

But, strange as it may appear, this is the only ground on

which it is attempted to sustain the jurisdiction, the learned counsel on the other side seeming to consider the bill, and not the decree, the subject by which the jurisdiction is to be tested.

The very statement of the proposition is, to my mind, enough to expose its fallacy. The statute gives jurisdiction against a non-resident when it is necessary to go into chancery to compel the specific execution of a contract for the conveyance of land. How is it to be ascertained that there was any such contract? By the decree, surely, finding it; not by the unsupported statements of the bill, abandoned, as in this case, by the complainant when he comes to take his decree. It would be monstrous to give the statute such a construction, as it would enable parties to defraud the law at pleasure. A complainant wishes to take an *ex parte* decree against a non-resident, — he has nothing to do but to file his bill, aver a contract for the conveyance of land which he wishes to have specially executed, add to it a claim for money paid, and take his decree for money, without troubling himself to prove that the defendant had land at all in the State. It would be a regular mode of bringing parties into court without notice, and obtaining decrees against them without allowing them a knowledge of the fact that they were in court. Out of a construction like this, aided by a reasonable mixture of fraud and perjury, a practice would grow up which would enable the merest vagabond to possess himself of the estate of any non-resident whose wealth might be to his fancy.

Indeed, the party need not always put himself to the trouble or incur the hazard of perjury. In this case the complainant got along very well without it, as he was not required to adduce any testimony of his claim, or make an affidavit to its truth; and such might be the case nine times out of ten, if a bill could be filed in the Court of Common Pleas in Ohio against a defendant in Massachusetts on a false suggestion, and a decree rendered against him on notice published in a country newspaper; especially if the case were conducted by counsel who would take care to enter his decree in the absence of the president judge.

The object of the chancery act of 1824 undoubtedly was to provide for a proceeding *in rem*, when a contract had been made touching land lying within the State, that the title thereto should be settled by either of the parties to the contract without going into another jurisdiction. It never was intended to create thereby a fictitious process, by which parties were to be made personally amenable to the jurisdiction of a court of whose proceedings, or even existence, they had never heard.

29 *

The act will not bear any such construction, and it would be against natural justice so to construe it.

This is not a case of local concernment, in which the decision of the courts of the State are of binding authority; and, though land is involved in the case, it is not a question of title in the ordinary acceptation of the term, but one of more extensive application. If this decree be valid for the present purpose, it is so for all purposes, and full force and effect must be given it in all the courts of the United States. Nor does the Supreme Court of Ohio, in the case of the Lessee of Boswell *v.* Sharp and Leppelman (set out at large in defendants' argument), give, or profess to give, a construction to the chancery act of Ohio, by which, upon sound and logical reasoning, this decree can be sustained as a personal decree. The learned judge who delivers the opinion in that case says expressly (page 25), that if the demand was simply personal, and the decree was pronounced without service upon the defendants, who resided in another State, the objection to the jurisdiction would have been well taken. He thus disembarrasses himself and us of the construction of the statute, and rests the case upon a general proposition, universal in its application if sound, and if unsound to be universally rejected. It is, that the statement of the bill, and not the substance of the decree, is the test to settle the question of jurisdiction. On this we take issue. We say it matters not what is demanded in the bill; if the decree be merely personal, it must be supported by personal service, and cannot be helped by a bill claiming land.

The statute of Ohio admits the general principle, that a court of chancery cannot take jurisdiction of a person without personal service made on him within the jurisdiction of the court; but provides that, where land lies within the jurisdiction of the court, it may be acted upon, and the title to it settled, in proper cases, by a proceeding in chancery, though one of the parties be a non-resident, — just as laws relating to foreign attachments allow land or personal property to be seized at law, and a judgment rendered against it for the payment of a common law debt. But in both these cases, though the proceeding is in the name of the owner of the property, it is substantially a proceeding *in rem*, and the judgment or decree can bind only the thing, not the person.

(The counsel then quoted Story's Conflict of Laws, pages 461–465, 549; 2 McLean, 514: 5 Paige's Ch. 302; 15 Ohio, 442; 8 Paige, 444.)

The following are extracts from *Mr. Stanberry's* argument, in reply.

In the argument of Mr. Ewing, counsel for the plaintiff, the question is stated to be, whether the decree is void, — and a nice distinction is taken between the validity of the proceedings up to the decree and the decree itself. But no such question is before this court. We can only look to the very question upon which the court below was divided in opinion, and that is specifically stated to be, whether the proceedings and decree are void. No one can say whether the judges of the court below would have differed as to the validity of the decree, if they had concurred as to the validity of the proceedings. The answer to be sent to them by this court cannot divide the question or limit it. *The question here is precisely what it was before the judges below,* — Are the proceedings and decree void ? Void as a whole or an entirety.

It is proper, however, to consider this question in the relation in which it arises, and not in the abstract. The proceedings and decree are of a court in the State of Ohio, and the question as to their validity arises upon a title to land within the same State, depending upon them. This narrows the question of validity, and excludes all inquiry as to extraterritorial effect, — a very important limitation.

With these preliminary remarks, I shall proceed to reply to the argument of Mr. Ewing. The learned counsel first states that the question which arises is, whether the defendants, in the case before the Sandusky Common Pleas, were in court, so that a personal decree could be rendered against them. Again, the question is stated to be upon the process and decree ; and, lastly, it is stated that it is the decree alone which gives character to the whole case.

I do not understand Mr. Ewing to argue that the case made by the bill was not a proper case for the jurisdiction of the court, under the twelfth section of the act of 1824. Indeed, no question can be made upon that. It was a case properly cognizable in a court of equity, involving the execution of a contract for the conveyance of land within the jurisdiction of the court. It was therefore precisely within a class of cases provided for in that section, and, upon the publication of the notice to the non-resident defendants, the jurisdiction of the court fully attached.

But it is argued that all this goes for nothing, inasmuch as the decree was not strictly according to the case made in the bill ; that the case made in the bill was a case *in rem*, whereas the decree was exclusively *in personam*.

In the first place, I answer to this, that the case made by the bill is not at all a case *in rem*, nor does the twelfth section of the act of 1824 enumerate a single case of that character.

In Hollingsworth v. Barbour, 4 Peters, 475, the point was made that a bill for a specific performance was a proceeding in rem. The opinion of Mr. Justice Trimble in the court below, which was adopted by this court in that case, goes directly to that point, and is as follows: — " The case under consideration is not properly a proceeding in rem; and a decree in chancery for the conveyance of land has never yet, within my knowledge, been held to come within the principle of proceedings in rem, so far as to dispense with the service of process on the party. There is no seizure nor taking into the custody of the court the land, so far as to dispense with the service of process on the party; constructive notice, therefore, can only exist in the cases coming fairly within the provisions of the statutes authorizing the court to make orders of publication, and providing that the publication, when made, shall authorize the court to decree."

All that can be said of the case made by the bill, and of the cases enumerated in the twelfth section, is, that they relate to contracts or questions affecting land situate within the State. They cover a vast field of equity jurisdiction, which has never been held to be a jurisdiction in rem. Unlike the proceedings in rem, there is no seizure and condemnation of the property in the first instance, and the relief administered may very properly go beyond the property which is the subject of the contract.

There is not a subject for jurisdiction enumerated in the twelfth section, in which the decree may not properly and necessarily be a decree for money. Take, for instance, the subject of the rescission of a contract for the conveyance of land, and suppose the plaintiff to be the purchaser, who alleges the contract, the payment of all money due upon it, and a ground for rescission. In such a case, if the allegations be found for the plaintiff, the necessary decree is for the repayment of the money, as well as the cancellation of the contract. Any thing short of that stops short of the true meaning of rescission.

Take, also, the subject of the specific execution of such a contract, and suppose the bill to be filed by the vendor, who has never received one cent of the purchase-money. What other execution or performance of the contract can there be in such a case, but the payment of the purchase-money, or a decree for such payment?

Such a construction can never be put on this statute as to say, that these subjects for jurisdiction, so brought within the cognizance of a court of equity, are to be dealt with in any other way than according to the necessities of the case, and the

usual relief administered in equity. If there were any doubt as to this, the express language of the section settles it. The concluding clause is in these words : — " Such court is hereby authorized to take cognizance thereof, and direct either personal notice, or notice by publication, of its pendency, to be given as in this act provided, and on proof of such notice having been given, to proceed as in other cases."

A proceeding or case in equity under this statute may then properly terminate in a decree for money ; that is, it is within the competence of the court to render such a decree, though it sound *in personam*, without committing so much as an error.

I do not understand Mr. Ewing to contend that a statute which should provide for constructive notice by publication, as the foundation for a judgment or decree for money, would be void, or that the judgment or decree rendered upon such notice would be a nullity. The argument is, that this statute authorized no such proceeding, and warranted no such decree.

A judgment or decree rendered in such a proceeding is valid within the State, and may be carried into effect upon the property of the defendant, real or personal, found within the State. The most that can be said against it is, that it shall not be allowed to have an extraterritorial effect. It is not strictly a judgment or decree *in personam*, but, as to its effect, is limited to the property of the debtor within the local jurisdiction.

The jurisdiction of a court of chancery over persons out of the reach of its process is founded either upon the inherent power of the court or upon positive statute. In England, as well as in various States of the Union, such jurisdiction is constantly exercised, either by a substituted and formal service of subpœna upon some officer of the court, or by publication. Nor is this jurisdiction at all confined to cases involving the title to lands within the particular sovereignty, but it extends to matters strictly *in personam*.

But we are not obliged to sustain such a statute, or such a proceeding, in this case. So far as the statute is concerned, there can be no question of its validity ; and so far as the proceedings are concerned, there is no question, they were exactly authorized by the statute. We have gone a step further than was necessary, and have argued the question of jurisdiction as if it depended on the decree. That is the ground taken in the argument for the plaintiff. We deny its soundness.

If the proceeding, that is to say, the bill and the publication, were in conformity with the statute, the question of jurisdiction is settled. It is impossible to contend, that, after proof of publication upon the bill, the court had not jurisdiction. The case

made by the bill was precisely one of the cases provided for in the statute, and the publication of notice was in all respects correct. When, then, was the case *coram judice?* Certainly, upon proof of publication, if not before. Then, how can it be said that afterwards it came to be *coram non?* If it were before the court upon 'the publication, it continued to be before the court until the end of the case. The decree was in the very case, between the very parties to the bill and publication, and upon the very contract set out in the bill. All the safeguards and requirements of the law, to prevent an assumption of jurisdiction, had been fulfilled. The case was brought precisely to the point at which the court is intrusted with the rights of the parties litigant.

Now, the most that can be said against the decree is, that it did not fully cover the whole case made by the bill. It does not distinctly decree a conveyance of the fourth of the land to the plaintiff, Hawkins. To have done full justice, and to have settled all the equities which grew out of the contract, that should have been done with more certainty. But if that alone had been decreed, it would not have settled all the equities, or decided the whole case. For the contract did not merely contemplate such conveyance, but contemplated also remuneration to Hawkins for services and advances, stipulated for as one term of the contract, and to be rendered and made, in reference to the land.

Mr. Justice McLEAN delivered the opinion of the court.

This case is before us on points certified, on which the opinions of the judges of the Circuit Court of the United States for Ohio were opposed.

In 1825, a bill was filed by Thomas L. Hawkins, in the Court of Common Pleas for Sandusky County, Ohio, against Thomas E. Boswell and others, which represented that, in the year 1816, Boswell, of the State of Kentucky, the complainant, Reed, and Owings agreed to build a saw-mill on the public land, with the view of purchasing the land when sold by the government. Boswell and Owings advanced a part of the money; the complainant was to be the active partner, and his share of the capital was to be paid by labor. That he expended labor and money until the land was sold, in 1818, at Wooster, in Ohio, when Reed and Owings abandoned the contract; and it was then agreed by Boswell, William T. Barry, of Kentucky, and William Whitimore, of Boston, and the complainant, to go on and purchase lot number nine, or a large part of it, on which the building for the mill had been commenced. The

purchase was made, and it was agreed that the complainant's share of the purchase-money should be paid in labor on the mill, and in improvements on the land. That he should. be the active partner, &c.

The complainant proceeded in the construction of the mill, and.expended for the company the sum of five thousand dollars, of which he advanced two thousand six hundred dollars, besides his own time ; that the complainant expected his partners would have conveyed to him one fourth of the land purchased, they having obtained a legal title to two thirds of the lot,. but that they have refused to do the same, or to account and refund him the money expended, &c. And the complainant prayed a decree for one fourth part of the land to which the defendants have obtained a title, and also that they may account, &c.

The defendants being non-residents of Ohio, the court ordered nine weeks' notice to be given in a newspaper, as the statute requires. There being no appearance of the defendants, the bill was taken as confessed,. and the matter was referred to a master, who reported a balance against them, and in favor of the complainant, of the sum of eighteen hundred and forty-four dollars and seventeen cents, for which a final decree was entered, and it was adjudged that it should have, from the time of its being pronounced, the operation and effect of a judgment at law, and be a lien on all the town lots of the defendants, and all other real estate owned by them within the county. And execution was authorized, &c. Several executions were issued and a number of lots were sold, among others lot number seven, containing seventy-seven acres and seventy-five hundredths, for which the sheriff's deed was executed.

For this lot number seven, an ejectment was brought by Boswell in the Circuit. Court of the United States, and issue being joined, on the trial the following questions were raised, on which the opinions of the judges were opposed.

" 1. Whether or not the proceedings and decree of the said Court of Common Pleas of Sandusky County, set forth in the record above stated, are *coram non judice.*

" 2. Admitting said proceedings and decree to be valid so far as relates to the land specifically described in the said bill in chancery, whether or not said proceedings and decree are *coram non judice* and void so far as relates to lot number seven, in controversy in this case, and which is not described in said bill in chancery ; or, in other words, whether said proceedings and decree are not *in rem,* and so void and without effect as to the other lands sold under said decree."

As the title to lot number seven only is involved in the ejectment suit, it is unnecessary to consider the first point certified. Under the decree, which was only for money, many lots were sold by the sheriff that are still held, it is presumed, under his deed; but the holders are not parties to this suit, and it may be decided without affecting their interests.

When the record of a judgment is brought before the court collaterally or otherwise, it is always proper to inquire whether the court rendering the judgment had jurisdiction. Jurisdiction is acquired in one of two modes; — first, as against the person of the defendant, by the service of process; or secondly, by a procedure against the property of the defendant, within the jurisdiction of the court. In the latter case the defendant is not personally bound by the judgment, beyond the property in question. And it is immaterial whether the proceeding against the property be by an attachment or bill in chancery. It must be, substantially, a proceeding *in rem*. A bill for the specific execution of a contract to convey real estate is not strictly a proceeding *in rem*, in ordinary cases; but where such a procedure is authorized by statute, on publication, without personal service of process, it is, substantially, of that character.

The chancery act of Ohio of 1824 confers on the Court of Common Pleas general chancery powers. In the twelfth section, jurisdiction is given over the rights of absent defendants, on the publication of notice, " in all cases properly cognizable in courts of equity, where either the title to, or boundaries of, land may come in question, or where a suit in chancery becomes necessary in order to obtain the rescission of a contract for the conveyance of land, or to compel the specific execution of such contract."

Under this statute the bill by Hawkins purports to have been filed. But without reference to the other lots sold under the decree, there is no pretence to say that the bill had any relation to the title or boundaries of lot number seven, or to any contract for the conveyance of the same. And it is only in these cases that the act authorizes a chancery proceeding against the land of non-residents by giving public notice. It is a special and limited jurisdiction, and cannot be legally exercised, except within the provisions of the statute.

The principle is admitted, that, where jurisdiction is acquired against the person by the service of process or by a voluntary appearance, a court of general jurisdiction will settle the matter in controversy between the parties. But this principle does not apply to a special jurisdiction authorized by statute, though

exercised by a court of general jurisdiction. The present case will illustrate this view. Admit that a special jurisdiction was acquired against all the other lots, yet number seven was in no way connected with them. It was not named in the bill, nor was there any step taken in relation to it, until it was levied on by the sheriff to satisfy the general decree. It was not within any one of the categories named in the statute. Until long after the decree, the title to it was not obtained by defendants. If it can be made subject to such a procedure, then the special jurisdiction given by the statute is converted, by construction, into a general proceeding against the property of non-residents by a mere publication of notice.

The property of an individual is subject, in a certain sense, to the law of the State in which it is situated. It is liable for taxes and to such special proceedings against it as the law shall authorize. An attachment may be laid upon it, and it may be sold in satisfaction of an established claim. And the legislature may, perhaps, subject other lands to the payment of the judgment on the attachment after the sale of the lands first attached. But no such proceeding is authorized by the act under which this procedure was had. It is limited to the cases enumerated in the statute.

It is said that the statute authorizes a decree for money. This may be admitted. Under the rescission of a contract the money paid may be decreed to be refunded, and the land covered by the contract, being within the special jurisdiction of the court, may be ordered to be sold. But the power of the court is limited to this. Under the assumption of a special power, it cannot be made general by any supposed necessity, beyond the provisions of the act. Such a construction would not only pervert the object of the legislature, but it would sacrifice the property of an individual without notice in fact, and who had no opportunity to make his defence.

The proceedings in this case are a practical commentary upon this construction.

It is said, if this construction of the act be erroneous, it does not make void the proceedings, and that the error can only be corrected by an appellate court. And we are referred to the case of Lessee of Boswell and others *v.* Sharp and Leppelman, 15 Ohio, 447, in which it is alleged that the Supreme Court of Ohio sustained the decision of the Common Pleas on the question now before us.

In that case the Supreme Court did hold that the Court of Common Pleas of Sandusky had jurisdiction in the chancery proceeding, and that the validity of the same could not be

questioned collaterally. But that decision was made in reference to a part of lot number nine, on which the mill was constructed, and to obtain a title for a part of which the bill was filed. The title to lot number seven was not involved in the case before the Supreme Court, and, consequently, they did not consider it.

It may be difficult in some cases to draw the line of jurisdiction so as to determine whether the proceedings of a court are void or only erroneous. And in such cases every intendment should be favorable to a purchaser at a judicial sale. But the rights of all parties must be regarded. No principle is more vital to the administration of justice, than that no man shall be condemned in his person or property without notice, and an opportunity to make his defence. And every departure from this fundamental rule, by a proceeding *in rem,* in which a publication of notice is substituted for a service on the party, should be subjected to a strict legal scrutiny. Jurisdiction is not to be assumed and exercised in such cases upon the general ground, that the subject-matter of the suit is within the power of the court. This would dispense with the forms of the law, prescribed by the legislature, for the security of absent parties. The inquiry should be, have the requisites of the statute been complied with, so as to subject the property in controversy to the judgment of the court, and is such judgment limited to the property named in the bill. If this cannot be answered in the affirmative, the proceedings of the court beyond their jurisdiction are void.

If this test be applied to the proceedings before us, we think in no just and legal sense can they be held to subject lot number seven to the decree of the court, nor to fix any personal liability on the defendants, and consequently, that the levy and sale of the sheriff were without authority and void, and the second question certified to this court must be so answered.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Ohio, and on the points or questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this court, that the proceedings and decree of the Court of Common Pleas of Sandusky County, as set forth in the record, are *coram non judice* and void, so far as relates to lot number

seven, and consequently that the levy and sale of the sheriff were without authority and void. Whereupon it is now here ordered and adjudged by this court, that it be so certified to the said Circuit Court.