LANE et al. v. KEMPNER et al.    (No. 8323.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 5, 1916.)

1. EXECUTION ⚖︎268—SALE—TITLE OF PURCHASER—INCUMBRANCE.

A purchaser of property under execution sale took title subject to the incumbrance of vendor's lien notes secured by a valid vendor's lien on record against the property.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 762–767; Dec. Dig. ⚖︎268.]

2. INJUNCTION ⚖︎27 — EXECUTION AND ENFORCEMENT OF JUDGMENT—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914, § 4643, providing when injunctions may be granted, owner of realty held entitled to writ of injunction enjoining the purchaser of the property under execution sale and the sheriff from seizing it under writ of sequestration issued in a suit in trespass to try title in which the purchaser at execution sale was plaintiff and the owner's tenant defendant.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 50, 51, 53; Dec. Dig. ⚖︎27.]

3. INJUNCTION ⚖︎16—RIGHT TO RELIEF—LEGAL REMEDY—STATUTE.

Vernon's Sayles' Ann. Civ. St. 1914, § 4643, providing when injunctions may be granted, gives an applicant within its terms a right to the relief irrespective of the existence of a legal remedy at law.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 15; Dec. Dig. ⚖︎16.]

4. SEQUESTRATION ⚖︎15 — RESTRAINING SEQUESTRATION — LEGAL REMEDY — RIGHT TO REPLEVY PROPERTY.

Plaintiffs in an injunction suit, who were not parties to a suit in trespass to try title against a tenant of one of them, were not authorized to replevy the property when seized under writ of sequestration, the defendant alone having the right under Vernon's Sayles' Ann. Civ. St. 1914, § 7103, providing that, when property has been sequestered, the defendant may replevy by giving bond.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. §§ 25–32; Dec. Dig. ⚖︎15.]

5. INJUNCTION ⚖︎17 — ENFORCEMENT OF JUDGMENT — SEIZURE UNDER WRIT OF SEQUESTRATION—ADEQUACY OF LEGAL REMEDY.

The remedy of plaintiffs, in suit to enjoin seizure of property under writ of sequestration issued in a suit in trespass to try title against the tenant of one of them, to permit the sequestration to have been completed, and then, had they prevailed in their suit to set aside the execution sale, to have brought an action in damages for loss sustained by reason of the seques-

⚖︎For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tration, was not as efficient as the remedy by injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 16; Dec. Dig. ☞17.]

6. EXECUTION ☞258 — SALE — COLLATERAL ATTACK.

A collateral attack on the validity of an execution sale by intervening in trespass to try title could not effect its avoidance for irregularities and defects not appearing on the face of the proceedings, and therefore such right of intervention does not defeat a suit for injunction to restrain seizure of the property on such writ of sequestration.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 736–739, 789; Dec. Dig. ☞ 258.]

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by R. L. Lane and another against I. H. Kempner and another. From an order dissolving a temporary injunction, plaintiffs appeal. Judgment reversed and cause remanded, and order of the trial court dissolving the injunction ordered set aside, such injunction being continued in force until lawfully altered.

Roy & Rowland and Wm. J. Berne, all of Ft. Worth, for appellants. Hunter & Hunter, of Ft. Worth, for appellees.

BUCK, J. This suit was brought by appellants, R. L. Lane and T. B. Freeman, against I. H. Kempner, alleged to reside in Galveston county, Tex., and N. O. Mann, sheriff of Tarrant county, Tex., to enjoin the defendants from seizing certain improved residence property in the city of Ft. Worth under a writ of sequestration issued in a suit in trespass to try title in which I. H. Kempner was plaintiff and Percy Webb defendant. A temporary injunction issued, which, upon motion of appellees, Kempner and Mann, was dissolved. From the order of dissolution, plaintiffs have appealed.

No oral evidence was heard, and the order of dissolution was based upon the petition, the answer, the motion to dissolve, the first supplemental petition, and plaintiffs' reply to defendants' motion to dissolve. The practically uncontroverted facts seem to be as follows:

[1] On December 18, 1914, Percy Webb, a married man, occupied and owned the premises in controversy, and on said date Webb and his wife executed and delivered to plaintiff Lane a warranty deed conveying said property; Lane taking the title in his own name, but the consideration having been paid by himself and his coplaintiff, Freeman. Said deed was duly filed for record in Tarrant county, January 15, 1915, and duly recorded. Upon the execution of said deed, on December 18, 1914, Webb rented said premises from plaintiff and occupied the same as plaintiff's tenant continuously from that time to the institution of this suit. On November 14, 1912, Turner & Dingee obtained a judg-

ment in the justice court of Tarrant county against R. L. Lane in the sum of $183.65 and costs, said judgment bearing interest at the rate of 6 per cent. per annum from date, execution having been issued on said judgment in due time and having been returned by the constable of Tarrant county with the indorsement of nulla bona. On December 14, 1912, an abstract of the above judgment was recorded in the judgment record of Tarrant county. On April 14, 1915, an alias execution issued on said judgment, and having been placed in the hands of the constable of precinct No. 1, Tarrant county, said constable levied upon the property in controversy as the property of appellant Lane, and duly advertised said property for sale, for 20 days prior to the sale, in the Union Banner, a weekly newspaper published in Tarrant county, and deposited an envelope addressed to appellant Lane, duly stamped and containing a notice of sale, in the United States post office, addressed to appellant's home in Ft. Worth. Said property was sold by the constable under the execution sale to Kempner for $225.

There was a valid vendor's lien on record against said property to secure vendor's lien notes in the sum of $5,000, due December 18, 1916, and, of course, Kempner took such title as he received, as purchaser under the execution sale, subject to this incumbrance secured by the vendor's lien. Kempner filed his deed for record with the county clerk of Tarrant county on June 1, 1915, and the same was duly recorded. On April 23, 1915, Kempner caused to be levied on the premises in controversy in the instant suit a writ of execution issued on a moneyed judgment that Kempner had obtained against Webb, said writ being levied on said premises as the property of said Webb, and thereupon, before said sale, a writ of injunction issued out of the Forty-Eighth district court of Tarrant county, Tex., in cause No. 39,225, upon application of R. L. Lane, enjoining and restraining said sheriff from making said sale; and said writ remains in full force and effect. On May 31, 1915, the aforesaid premises having been duly levied upon and advertised for sale on June 1, 1915, under the Turner & Dingee judgment against Lane, and as the property of Lane, said Lane, acting through his friend Blanton, agreed with the attorneys of Turner & Dingee (the conversation being had with W. C. Blalock of the firm of Bryan, Stone & Blalock, attorneys for Turner & Dingee) that the sale of said premises should not be made on June 1st, and that Lane should pay said judgment not later than June 3, 1915. On June 2d, Lane tendered to said attorney the money due on the Turner & Dingee judgment, but the money was refused, the attorney stating that the judgment sale had already taken place. The firm of Hunter, West & Hunter, in fact, seem to have

represented Turner & Dingee in having the alias execution issued, and the subsequent sale made, on June 1st, of the property in controversy under said judgment.

On learning of the violation of the alleged agreement in having the sale take place on June 1st, appellant Lane, on June 4, 1915, instituted a suit in the Forty-Eighth district court of Tarrant county against Turner & Dingee, the attorneys with whom said agreement was alleged to have been made, and I. H. Kempner, to set aside the execution sale made to Kempner on said June 1st, and so far as the record discloses this suit is still pending. On June 5, 1915, Kempner demanded of said Percy Webb the possession of the said premises, notifying Webb that he (Kempner) then owned the property. Webb refused to deliver possession to or to attorn to Kempner, and on July 16, 1915, Kempner sued Webb alone in trespass to try title to recover said property and cause a writ of sequestration to issue therein, said suit being No. 39,-464, under which the sheriff was directed to sequestrate said property. Thereupon Sheriff Mann, under said writ of sequestration, took possession of said premises, and placed Percy Webb and his wife in possession thereof as the sheriff's agent to hold and take care of the same during the 10 days in which said Percy Webb was entitled to replevy said premises, and, in case he did not replevy the premises within said time, to put him out of same according to law. Whereupon, on July 21, 1915, the suit, which is now before us on appeal, was instituted by Lane to enjoin said Kempner and Mann from further proceeding under the authority of said writ of sequestration, or in any way disturbing the possession of plaintiffs of said premises, and from ousting, or in any way interfering with or disturbing the possession of, said Webb as plaintiff's tenant.

Plaintiffs, in their original and first supplemental petition, and in their reply to defendants' motion to dissolve, alleged, among other things, and in addition to what has heretofore been set out:

(1) That the premises involved were highly improved as residence property, and that, unless occupied by a careful and provident person, the improvements on the said premises would be wasted and the premises irreparably damaged.

(2) That when M. S. Blanton went to A. S. Dingee, of the firm of Turner & Dingee, he stated to Dingee that he desired to satisfy and pay off the judgment against Lane, together with all costs accruing by reason of said levy and advertisement of sale, and requested that release of said judgment in writing be prepared by said Turner & Dingee; that thereupon said Dingee, acting for himself and his firm, requested Blanton to take up the matter of payment of such judgment and the execution of the release with their attorney, Morgan Bryan, and, in case said Bryan could not be seen, to take up such matter with W. C. Blalock, who was an attorney at law and associated with said Morgan Bryan as one of the attorneys of Turner & Dingee; that both Bryan and Blalock were duly authorized to act for Turner & Dingee, and that the settlement that they, or either of them, made, would be satisfactory to Turner & Dingee.

(3) That, upon going to see Bryan, Blanton learned that Bryan was out of the city, and talked with Blalock, and received from said Blalock information as to the total amount due upon the judgment, and that Blalock advised Blanton that a release of said judgment would be promptly drawn and ready for delivery, and upon the payment of said amount not later than June 3, 1915, said release would be delivered to said Lane, or to said Blanton for said Lane, and that in the meantime no sale would be made under the judgment or further costs incurred.

(4) That the firm of Hunter, West & Hunter, the attorneys for I. H. Kempner, were also the attorneys for Turner & Dingee in seeking to collect the justice court judgment, and in effecting the levy and the execution sale thereunder, and said firm of Hunter, West & Hunter had notice prior to the sale of the premises on June 1, 1915, of the agreement entered into between W. C. Blalock, also attorney for Turner & Dingee, and Mat S. Blanton, acting for and representing R. L. Lane, and they further averred, on information and belief, that said Kempner, when he purchased said premises at said execution sale, had notice of the aforesaid agreement between plaintiffs and Blalock.

(5) That the improvements on the premises were of the reasonable value of $5,000, the land being also of the reasonable value of $5,000; that the residence was insured in several policies in the aggregate sum of $6,000, or $4,000, the allegations upon this point being somewhat ambiguous; and that each of said policies contained a provision that if any change should take place in the interest, title, or possession of the property insured, whether by legal process, or judgment, or by voluntary act of the insured, or otherwise; or if the hazard be increased by any means within the knowledge of insured; or if mechanics should be employed in building, altering, or repairing the described premises for more than 15 days at one time; or if the interest of the insured should be other than unconditional and sole ownership, etc.; that the policy should be null and void; and plaintiff averred that, by reason of the provisions in said policies, and if the injunction should be dissolved, he was in great danger, in case of loss or destruction by fire, of suffering irreparable injury.

[2] In defendants' answer there seems to be no denial of the several allegations contained in plaintiff's several pleadings, as set out hereinabove under Nos. 1 to 5, inclusive. Therefore we are of the opinion that, on the face of the pleadings, plaintiff presented just

grounds for the writ of injunction sought. Neither of plaintiffs in this suit was made a party defendant in the suit of Kempner v. Webb. Webb was holding possession of the premises as Lane's tenant, and therefore such possession was in law Lane's possession. Kempner's claim to the right of possession was predicated upon his possession of Lane's title, acquired through the execution sale. The sufficiency of this title was specifically attacked by the suit instituted June 4, 1915, by Lane and Freeman against Kempner and others, which suit was pending on July 16th, when Kempner sought by suit in trespass to try title against Webb to gain possession of the property involved, out of which suit the sequestration writ was issued. Under article 4643, Vernon's Sayles' Tex. Civ. St., injunctions may be granted:

"(1) Where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant.

"(2) Where, pending litigation, it shall be made to appear that a party (is) doing some act respecting the subject of litigation, or threatens or is about to do some act or is procuring or suffering the same to be done in violation of the rights of the applicant, which act would tend to render judgment ineffectual.

"(3) In all cases where the applicant for such writ may show himself entitled thereto under the principles of equity, and as provided by statutes (and all other acts of this state providing for the granting of injunctions)," etc.

[3] These provisions of the statute have been construed in many cases by the courts of this state as giving an applicant, putting himself within their terms, a right to the injunctive relief, irrespective of the existence of a legal remedy at law. It is not a sufficient answer to say that the applicant had a remedy at law, and that he should first be forced to resort to such legal remedy. As said by Justice Denman in Sumner v. Crawford, 91 Tex. 129, 41 S. W. 994:

"But it is contended that the trustee had an adequate remedy by suit for damages against the officer, and therefore was not entitled to an injunction. We have been cited to no authority which would have permitted him in such a suit to recover the loss the trust estate would have suffered by reason of the trustee's not being able to sell all the goods not seized for as great a sum as he could have sold them for if the goods levied upon had not been taken out of the stock. It would be very difficult to estimate such loss. We do not think a court of equity should turn away the trustee seeking its aid in the execution of the trust, because of the existence of a remedy so doubtful as to its adequacy. 'It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the end of justice and its prompt administration as the remedy in equity.' Watson v. Sutherland, 5 Wall. 74 [18 L. Ed. 580]; North v. Peters, 138 U. S. 271 [11 Sup. Ct. 346, 34 L. Ed. 936]. In courts administering both law and equity, like ours, the rules denying injunction when there is a remedy at law should not be applied as rigidly as at common law, where the issuance of the writ in equity was, to a certain extent, an invasion of the jurisdiction of another tribunal. If, as here, the applicant shows a clear right to be left in the undisturbed possession of certain property, and that such right is about to be invaded without semblance of right by another, such invasion, on principle, should be prevented in its incipiency by injunction, instead of allowing the injury to be inflicted and then leaving the party to his legally adequate, but in fact generally very inadequate, remedy of an action for damages."

See, also, Smith v. Carroll, 28 Tex. Civ. App. 330, 66 S. W. 863; McFarland v. Wilder, 54 S. W. 267; Green v. Gresham, 21 Tex. Civ. App. 601, 53 S. W. 382; Sullivan v. Dooley, 31 Tex. Civ. App. 589, 73 S. W. 82; Mitchell v. Burnett, 57 Tex. Civ. App. 124, 122 S. W. 937; S. W., etc., Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1049.

We held in Tipton et al. v. Railway Postal Clerks' Association et al., 173 S. W. 562, where many of the material allegations of plaintiff's petition were not specifically denied by the answer, and such allegations showed a right in plaintiff to the relief sought, that it was error for the court to dissolve a temporary injunction previously granted.

[4-6] We question whether applicants had a remedy at law that was adequate or "as practical and efficient to the ends of justice and its prompt administration" as the remedy of injunctive relief. Not being a party to the suit of Kempner v. Webb, plaintiffs in this suit were not authorized to replevy the property. Only the defendant has this right. Article 7103, Vernon's Sayles' Tex. Civ. St.; Harris v. Shackelford, 6 Tex. 133; Haile v. Oliver, 52 Tex. 443; Lang v. Dougherty, 74 Tex. 226, 12 S. W. 29.

Further, plaintiffs could have permitted the sequestration to have been completed, and then, in case they had prevailed in their suit to set aside the execution sale, might have brought an action in damages for loss they might have sustained by reason of the sequestration; but such a remedy would certainly have not been as efficient as the relief herein sought, and especially so since the defendant Kempner is shown to have resided in Galveston county. Even if they had intervened in the trespass to try title suit of Kempner v. Webb, the attack therein on the validity of the execution sale would have been a collateral attack only, and as such could not have effected its avoidance for irregularities and defects not appearing on the face of the proceedings, such as are urged in the present suit.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded, and it is ordered by this court that the order of the trial court dissolving the injunction be set aside, and that said injunction theretofore granted continue in force until otherwise lawfully altered.