HART v. FAKES & CO. et al. (No. 12240.)

Court of Civil Appeals of Texas. Fort Worth. June 8, 1929.

Rehearing Denied July 13, 1929.

Fischer & Fischer, of Wichita Falls, for appellant.

Martin & Oneal, of Wichita Falls, for appellees.

DUNKLIN, J. On March 22, 1928, Mrs. U. S. Davis executed to Fakes & Co. a chattel mortgage on certain furniture and fixtures located in a dwelling house in the city of Wichita Falls, Tex., to secure the payment of her promissory note in favor of the mortgagee in the sum of $2,830, with accrued interest, which indebtedness was incurred for the purchase price of the furniture and fixtures when they were sold to Mrs. Davis by the mortgagee.

A suit was instituted by Fakes & Co. against Mrs. Davis in the district court of

Tarrant county, and plaintiff therein recovered a judgment for the amount of the debt with foreclosure of the chattel mortgage lien on the furniture and fixtures. Thereafter, an order of sale was issued out of that court, and the mortgaged property was levied on and advertised for sale by W. G. Bralley, sheriff of Wichita county, in whose hands the writ was placed for execution.

The present suit was instituted by Lewis Hart in the district court of Wichita county, against Fakes & Co. and Mrs. Davis and W. G. Bralley, sheriff of Wichita county, to restrain the sale of the property that had been so levied on.

In Hart's petition it was alleged that on December 31, 1927, which was some three months prior to the date of Fakes & Co.'s mortgage, Mrs. Davis executed to him a mortgage lien on the same furniture and fixtures to secure a promissory note she owed to him in the principal sum of $2,500. According to further allegations in Hart's petition, that mortgage lien was taken in the form of a bill of sale, which was duly filed for record in the records of bills of sale of Wichita county, and at the time Fakes & Co. took its mortgage it had actual notice of his prior mortgage lien, although the record of it in the records of bills of sale in Wichita county was not constructive notice of that lien. Hart prayed for a personal judgment against Mrs. Davis and also for a foreclosure of his mortgage lien against her and Fakes & Co. as a superior lien to that of Fakes & Co.

In Hart's petition he further prayed for a temporary writ of injunction restraining Fakes & Co. and the sheriff from selling the property so advertised for sale until the final disposition of his suit. The petition was duly verified by Hart, and upon an ex parte hearing thereof, the temporary writ of injunction prayed for was duly issued. Thereafter, upon a motion of Fakes & Co., the temporary writ of injunction was dissolved, and this appeal has been prosecuted by Hart from that order.

Upon the hearing of the motion to dissolve, evidence was introduced by both parties, which appears in a statement of facts filed with the record before us.

The evidence shows without controversy that Mrs. Davis did execute the two notes and mortgage liens mentioned above, and for the amounts already recited, both of which debts are now past-due and unpaid. But the testimony was conflicting as to whether or not Fakes & Co. had actual notice of the mortgage lien claimed by Hart; Mrs. Davis testifying that she notified the representative of Fakes & Co. of Hart's lien at the time she executed the one in favor of Fakes & Co., and the representative of Fakes & Co. flatly denying that Mrs. Davis gave him any such notice of Hart's lien. The evidence further showed that the lien claimed by Hart was in the form of a bill of sale which was recorded in the bill

of sale records, and of which record Fakes & Co. had no actual notice. Hart testified that at the time he took his lien he knew that Mrs. Davis had, in October, 1926, given her note to Fakes & Co. for the sum of $2,800, payable in monthly installments of $150 each, but did not know that she was being pressed for payment at that time. He further testified that he and Mrs. Davis had been associated together in business in the corporate name of Davis-Hart Company, and another corporation known as the Wichita-Seiberling Piano Company. He further testified that the bill of sale executed to him by Mrs. Davis was intended to have the effect of a chattel mortgage, and the reason it was drawn in that form was upon the advice of his attorney. He further testified that he did not record the bill of sale for some time after it was executed; that he left it in his private effects in the home of Mrs. Davis, where he also resided as a boarder and where he eats and sleeps and keeps his lock box; that the house in which Mrs. Davis and Hart both lived now belongs to Hart, he having purchased it from Mrs. Davis, and the furniture and fixtures in controversy are now located and being used in that house.

Hart further testified that after Fakes & Co. had procured the judgment against Mrs. Davis, he went to Fort Worth to interview Fakes & Co. for the purpose of trying to get some concession in Mrs. Davis' favor on the judgment then held against her, but that he did not inform Fakes & Co. of the fact that he also held a lien upon the same property covered by the mortgage of Fakes & Co. His reason for not giving that information was that he desired first to consult his attorney before letting Fakes & Co. know of his lien. He further testified that he did not let anybody know he had a lien on the property until Fakes & Co. had had the property levied on by the sheriff of Wichita county, and had advertised the same for sale; also, that the first time he learned of the Fakes & Co. mortgage was when he went to see them on a trip to Fort Worth, which was after they had obtained a judgment. The proof further showed that the furniture and fixtures is the only property now owned by Mrs. Davis, and that she is insolvent.

The bill of sale executed by Mrs. Davis to Hart bears date December 31, 1926, and that is the date of acknowledgment before a notary public, and it was indorsed as being filed for record in the office of the county clerk of Wichita county on February 23, 1928. But Mrs. Davis and Hart testified that the instrument was executed on December 21, 1927, and that the date of the instrument was a clerical error. Hart also testified that he did not know of the suit against Mrs. Davis in Wichita county until after the judgment of that court had been procured.

The record further shows that the suit so instituted by Hart was instituted on March

29, 1929, and that it is an appearance case to the July term of the Eighty-Ninth district court of Wichita county.

Appellant cites the following quotation from Hightower v. Price (Tex. Civ. App.) 244 S. W. 652, 655: "The rule to be followed in determining the allowance of a temporary injunction is that of whether there is a case of probable right and probable danger to the right, as alleged, without the injunction."

Appellant also cites article 4642, Revised Civil Statutes of 1925, which is to the effect that an injunction may be granted to restrain some act respecting the subject-matter of pending litigation in violation of the rights of the applicant when said act would tend to render the judgment ineffective, or irreparable injury to the property is threatened. Also the decision in Lane v. Kempner (Tex. Civ. App.) 184 S. W. 1090, opinion by Justice Buck, to the effect that although the applicant for the writ has a remedy at law, if such remedy at law is not as adequate, or as practical and efficient to the ends of justice and its prompt administration, as the remedy of injunctive relief, then the applicant would be entitled to injunctive relief. See Ivory v. Kempner, 2 Tex. Civ. App. 474, 21 S. W. 1006, of like effect.

Appellee insists that a purchaser or purchasers at the sale of property, under the execution which had been levied thereon, would not be charged with constructive notice of Hart's mortgage lien, since the same was not recorded in the chattel mortgage records, and that therefore title would pass to the exclusion of that lien. It is further pointed out that, at all events, should the furniture and fixtures be sold to different parties with actual notice of that lien, then plaintiff would be put to the expense of divers suits against the purchasers, and therefore any remedy that he might have against them would be wholly inadequate.

■ But another rule of decision is announced in Massa et ux. v. Guardian Trust Co. (Tex. Civ. App.) 258 S. W. 598, 601, as follows: "It is well-settled that the granting or refusal of a temporary injunction is within the sound discretion of the district court, and that the court's action is not reviewable on appeal, unless it clearly appears from the record that there has been an abuse of such discretion."

To the same effect are many other decisions, such as Houston Electric Co. v. Mayor & City Council of Houston (Tex. Civ. App.) 212 S. W. 198; Simon v. Nance (Tex. Civ. App.) 142 S. W. 661; Meyer v. Cockcroft (Tex. Civ. App.) 273 S. W. 665; Hudson v. Kerby (Tex. Civ. App.) 5 S.W.(2d) 1007; Pavey v. McFarland (Tex. Civ. App.) 234 S. W. 591; Whitham & Co. v. Hendrick (Tex. Civ. App.) 1 S. W.(2d) 907.

In George v. Jonesville Oil & Gas Co. (Tex. Civ. App.) 226 S. W. 445, it is said: "It has been held that the dissolving or granting of a temporary injunction rests largely in the discretion of the court, and its action will not be disturbed in the absence of an abuse of discretion. * * * The power 'to hear and determine all applications' involves the power and authority to decide whether or not the party applying for the temporary relief is entitled to such relief. The Judge on conflicting evidence here determined against the appellants, and this court is not warranted in disturbing the order entered."

[2] As noted above, the evidence heard by the trial judge upon the motion to dissolve the injunction was conflicting upon the issue as to whether or not Fakes & Co. took their mortgage with actual notice of the lien claimed by Hart. It is to be noted further that the testimony of Hart and Mrs. Davis was to a different date from the bill of sale executed to Hart. In view of those conflicts in connection with other facts and circumstances, including Hart's failure to inform Fakes & Co. of his alleged lien when he came to Fort Worth, we are unable to say that the trial judge abused his discretion in dissolving the temporary writ of injunction theretofore issued.

Accordingly, the judgment appealed from is affirmed.